UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCO ANTONIO CORRALES-PATINO,

                    Plaintiff,

              – against –

PROCIDA CONSTRUCTION CORP., DRAPER FAMILY
HOUSING DEVELOPMENT FUND CORPORATION,
THE GILBERT ON FIRST LLC, GILBERT MIDDLE
CONDO LLC, and ALVIN H. BUTZ, INC.,

          Defendants and Third-Party Plaintiffs,

              – against –

SPRING SCAFFOLDING LLC.,

                Third-Party Defendant.

**OPINION AND ORDER**

19 Civ. 5579 (ER)

## I.    **Background**

     This is an action regarding personal injuries sustained by Marco Antonio Corrales-Patino ("Corrales") on January 16, 2018 while working on a construction project in Manhattan. Corrales was unloading materials from a flatbed truck when he fell off the truck to the ground below, causing serious permanent injuries.  Doc. 89 at 1.  The parties have submitted cross-motions for summary judgment.[1]  For the reasons below, Corrales' partial motion for summary judgment is DENIED, Defendants/Third-Party Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part, and Spring Scaffolding's motion for summary judgment is GRANTED in part and DENIED in part.

---

[1] Defendants/Third-Party Plaintiffs' request for oral argument is denied as moot, Docs. 130, 131.

## II.   **Statement of Facts**

### A.   **The Parties**

Corrales' accident occurred at 1912 First Avenue, New York, New York ("the site").

Doc. 89 at 1; Doc. 93 at 1.  Defendants Draper Family Housing Development Fund Corporation,

The Gilbert on First LLC, and Gilbert Middle Condo LLC are lessees of the premises ("the

owners").[2]  Doc. 93 at 1.  The owners contracted with Defendants Procida Construction Corp.

and Alvin H. Butz, Inc. ("the general contractors") as general contractors for construction of a

new 16-story building at the site.  Doc. 89 at 1; Doc. 93 at 1.  The general contractors then

subcontracted with Spring Scaffolding to construct a sidewalk bridge, pipe scaffolding, a

personnel hoist, fencing, and gates scaffolding work at the site.  Doc. 89 at 1; Doc. 93 at 1.

Spring Scaffolding then sub-subcontracted with Corrales' employer, Spring Installations, LLC

("Spring Installations") to assist in the work, allegedly unbeknownst to the general contractors

owners.  Doc. 89 at 1; Doc. 93 at 1–2.  Spring Installations employed Salvador Lopez as

foreman, and he supervised Corrales on the day of the accident and directed Corrales as to how

to unload the materials.  Doc. 89 at 4; Doc. 118 at 21.

Several individuals had responsibility for ensuring that work at the site was carried out in

a safe manner.  The general contractors employed John Balog, the site supervisor, who had the

authority to stop unsafe work at the site.  Docs. 90-3 at 87–88; 92-5 at 37, 54.  The general

contractors also hired an outside company, Site Safety, LLC, to ensure safe work at the site.

Doc. 90-3 at 31; Doc. 93-1 at 3.  Karell Enright, an employee from Site Safety, LLC, also had

authority to stop unsafe work.  Doc. 91 at ¶¶ 15–16.  The owners' representative, Matthew

---

[2] While Defendants Draper Family Housing Development Fund Corporation, The Gilbert on First LLC, and Gilbert
Middle Condo LLC contest the label "owners," the difference between an owner and a lessee is immaterial in this
case.

Horrigan of Horrigan Development, LLC, also walked through the worksite weekly.  Doc. 90-1 at 32; Doc. 93-1 at 2.  Horrigan stated that if he saw an unsafe work condition, he would report it to the general contractors.  Doc. 90-1 at 33.

### B.  The Accident

On January 16, 2018, Corrales was standing on a flatbed truck unloading materials when he fell off the truck.  Doc. 89 at 454; Doc. 93 at 6.  There is a dispute concerning where exactly Corrales was standing and how high he was off the ground at the time of the accident.  Corrales alleges that he was standing on scaffolding materials placed on the flatbed and was approximately 10 feet off the ground when added to the four foot height of the flatbed truck.  Doc. 91 at ¶¶ 8–9.  Defendants[3] allege that he was standing on a gate within the truck at no more than four feet, two and a half inches above the ground based on the testimony of the foreman Salvador Lopez.  Doc. 107 at ¶¶ 8–9; Doc. 103-5 at 47.  Spring Scaffolding concurs with Defendants that the fall was from a height of no more than four feet, two and a half inches, also based on the testimony of Lopez.  Doc. 121 at ¶ 8.  Defendants and Spring Scaffolding argue that the "load list" of materials being unloaded that day confirm that there was no scaffolding or other materials that could reach a total height of 10 feet on the flatbed, and that only clamps, wheels, girts, and a gate were delivered that morning, all of which were "small items" except for the gate.  Doc. 103-4 at 35–36.  Spring Scaffolding alternatively argues that Corrales was not standing on any materials, but rather stood on the bed of the truck itself at a total height of four feet.  Doc. 132 at 5, 7–8.

Corrales was wearing a hard hat at the time of the fall, as well as a harness that he had not attached as there was no place to attach the harness.  Doc. 89 at 5; Doc. 93 at 13.  Corrales

---

[3] For ease of reference, Defendants/Third-Party Plaintiffs will be referred to solely as "Defendants."

sustained serious injuries to his shoulder and spine from the fall, including:  a tear of the posterior superior glenoid labrum of the left shoulder requiring an arthroscopic repair with synovectomy and bursectomy; herniated cervical discs requiring trigger point and epidural injections; an anterior cervical hemivertebrectomy at C4, C5, C6; discectomy and fusion at C4/5, C5/C6, and C6-C7 with intervertebral implants; and herniated lumbar discs, requiring trigger point and epidural injections, disk ablation, annuloplasty and fluoroscopic lumbar spine localization at L4-L5.  Doc. 89 at 5.

### C.  <u>Contract Between the Owners and General Contractors</u>

On April 5, 2017, the owners entered into a written contract with the general contractors. Doc. 90-2.  In relevant part, the contract states:  "The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to employees on the Work and other persons who may be affected thereby."  Doc. 90-2 §§ 10.2.1–2.  This contract contains an indemnification provision requiring the general contractors to indemnify "the Owner, Landlord, Owner's Lenders, and all other parties required to be listed as additional insureds under any insurance policy required hereunder . . . ."  Doc. 92-1 at 79.

### D.  <u>Contract Between the General Contractors and Spring Scaffolding ("Subcontract")</u>

On April 13, 2017, the general contractors entered into a subcontract with Spring Scaffolding.  Doc. 92-3.  In relevant part, the contract states:

> To the fullest extent permitted by law, Subcontractor agrees to defend, indemnify, and hold harmless General Contractor and Owner . . . and their agents . . . from and against any claim, cost, expense, or liability (including attorney's fees, and including costs and attorney's fees incurred in enforcing this indemnity), attributable to bodily injury . . . arising out of, resulting from, or occurring in connection with the performance of the Work by Subcontractor, its subcontractors and suppliers of any tier, or their agents, servants, or employees, and includes claims by its employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder;

provided, however, Subcontractor's duty hereunder, shall not arise if such injury . . . is caused by the sole negligence of a party indemnified hereunder.

*Id.* § 11.1.  The Subcontract defines "Subcontractor" as "the individual partnership, firm, corporation or business entity who or which has signed this Contract as Subcontractor [which] also includes Subcontractor's subcontractors and suppliers irrespective of tier." *Id.* § 1.9.  The Subcontract also defines General Contractor as "Procida-Butz 1912 1ˢᵗ Avenue" and defines Owner as "The Gilbert on First LLC and Draper Family Housing Development Fund Corporation as nominee c/o Gilbert on First Developer LLC." *Id.* §§ 1.5–1.6.  However, the Subcontract is signed by "Procida Construction Corp., joint venture partner Mario Procida" in the space where the General Contractor signs, even though neither Procida Construction Corp. nor Mario Procida are the defined general contractor within the contract. *Id.* at 24.

The Subcontract defines Work in part as:

[t]he furnishing of all labor and/or materials by Subcontractor, at or for the benefit of the Project; unless specifically excepted, the furnishing by Subcontractor of all equipment, supplies, plant, tools, scaffolding, transportation, superintendence, inspections and temporary constructions of every nature; that which is to be produced and supplied pursuant to the Contract; …

*Id.* at § 1.10.

The Subcontract also consists of "the Prime Contract between Owner and Contractor including the general conditions, supplemental general conditions, general requirements and all attachments thereto and the other Contract Documents enumerated therein." *Id.* at 23.

The Subcontract also requires Spring Scaffolding to obtain liability insurance. *Id.* at §§ 12.1, 12.3, Insurance Exhibit A.  The insurance provision provides in part as follows:

12.1 The terms and conditions of insurance to be provided by the Subcontractor are described in Insurance Exhibit A attached to the Subcontract.  Owner, General Contractor, and their agents, employees or assigns shall not be liable to Subcontractor or its agents, employees or assigns for any loss or damage covered by the insurance policies described in the aforementioned Insurance Exhibit A.  The failure of Subcontractor to

obtain the insurance required therein prior to the commencement of the Work shall not be deemed a waiver of such requirements or of any rights or remedies that Owner or General Contractor may have.

12.3 If an action for bodily injury and/or property damage is commenced against Owner and/or General Contractor, which in the opinion of General Contractor's counsel or insurance coordinator is covered by the indemnity provisions of Article 11 or the insurance required hereunder of Subcontractor, Subcontractor shall, upon General Contractor's written request, promptly cause Subcontractor's insurance carrier to have its attorneys appear timely in the action on behalf of Owner and/or General Contractor and provide the defense of Owner and/or General Contractor. The insurance required to be provided by Subcontractor, pursuant to the insurance Exhibit A attached to the Sub-Contract, shall not be deemed to be a limitation in any way upon the obligations of the Subcontractor that are required by the indemnity provisions of Article 11.

*Id.* at §§ 12.1, 12.3. Spring Scaffolding was required to obtain liability insurance that names as "Additional Insureds" a number of entities, including Procida-Butz 1912 1st Avenue, Procida Construction Corp., Alvin H. Butz, Inc., Butz Enterprises, Inc, Greg Butz, Draper Family Housing Development Fund Corporation, Gilbert on First Managing Member LLC, Gilbert Middle Condo LLC, and Gilbert on First Developers LLC. *Id.* at 29–30. The insurance policy was required to cover, among other things, Commercial Automobile Liability "with a combined single limit for Bodily Injury and Property Damage of at least $1,000,000 per occurrence" with the above-named parties also covered as Additional Insureds. *Id.* at 28. A Certificate of Insurance indicating coverages was to be "submitted, approved, and available to Procida Construction Corp. prior to commencement of work." *Id.*

### E. State Farm Insurance Provision

Spring Scaffolding obtained insurance coverage in compliance with the Subcontract through State Farm Insurance Company ("State Farm") with an effective date of April 5, 2017.[4] Doc. 52-1. The Insurance Certificates state that they are issued "as a matter of information only

---

[4] Spring Scaffolding obtained insurance coverage through other providers as well, but only the automobile policy obtained through State Farm Insurance Company is relevant in this matter since Corrales' injuries involved a covered automobile and other insurance providers disclaimed coverage.

and confer[] no rights nor insurance coverage upon the certificate holder." *Id.* at 2.  On March

20, 2020, Defendants tendered their defense and indemnity to State Farm.  Doc. 103-11 at 2–3.

On August 3, 2020, State Farm agreed to assume the defense pursuant to a "full and complete"

reservation of rights as follows:

> State Farm's assessment reveals that State Farm may in fact be under no duty to defend
> or indemnify the Defendants in connection with some or all of the claims in the Lawsuit.
> Therefore, State Farm specifically and fully reserves all of its rights under the State Farm
> Policy, including, but not limited to, its right:  (1) to withdraw from the defense, (2) to
> disclaim any duty to defend or indemnify the Defendants for some or all of any damages
> that may be awarded against them . . ., (3) to commence a lawsuit to determine its rights
> and obligations in connection with the Lawsuit, and (4) to assert additional bases for
> disclaiming coverage or reserving the right to disclaim coverage.

Doc. 103-11 at 4.

### III.   Procedural History

Corrales filed his initial complaint on June 14, 2019.  Doc. 1.  He then filed an amended

complaint on September 6, 2019 alleging liability under New York Labor Law ("NYLL")

Sections 200, 240(1), and 241(6).  Doc. 23.  Defendants Draper Family Housing Development

Fund Corporation, The Gilbert on First LLC, and Gilbert Middle Condo LLC ("the owners")

filed an answer on October 8, 2019.  Doc. 35.  Defendants Procida Construction Corp. and Alvin

H. Butz, Inc. ("the general contractors") filed an answer on October 14, 2019.  Doc. 37.

Defendants (the owners and the general contractors) filed an amended third-party complaint

against Spring Scaffolding, LLC ("Spring Scaffolding") on November 5, 2019 requesting

indemnification under contractual indemnity provisions and alleging breach of contract regarding

Spring Scaffolding's insurance requirements.  Doc. 41.  Spring Scaffolding answered the third-

party complaint on November 12, 2019.  Doc. 42.

On July 21, 2021, Corrales moved for partial summary judgment on his claim under

NYLL Section 240(1) against all Defendants and on his claim under NYLL Section 200 against

the general contractors.  Doc. 88.  Defendants also moved for summary judgment on July 21,

2021 seeking (1) dismissal of Corrales' NYLL Section 200 and Section 241(6) claims; (2)

contractual indemnification against Spring Scaffolding; and (3) dismissal of Spring Scaffolding's

counter- and/or cross-claims.  Docs. 92–93.  On September 16, 2021, Spring Scaffolding cross-

moved for summary judgment to (1) dismiss Corrales' claims under Section 240(1) and Section

241(6); (2) dismiss Defendants/Third Party Plaintiffs' complaint; and (3) to the extent necessary,

seek leave to amend their answer to include an affirmative defense of anti-subrogation.  Doc.

102.

## IV.    Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

affect the outcome of the litigation under the governing law.  *Id.*  The party moving for summary

judgment is first responsible for demonstrating the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F.

Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v.*

*Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (citation omitted).  The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment.  *Morales*, 249 F.3d at 121.

For claims under New York law, the Court should determine how the New York Court of Appeals would decide them.  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (citation omitted).  Decisions from New York's intermediate appellate courts are helpful indicators, but this Court is not bound by those decisions.  *Id.* (internal quotation marks and citations omitted).

## V.   <u>Section 240(1)</u>

Corrales moves for summary judgment against Defendants on the issue of liability under Section 240(1).  Spring Scaffolding cross-moves for summary judgment dismissing Plaintiff's cause of action under Section 240(1).

### A.  <u>Legal Standard</u>

Section 240(1) of the New York Labor Law states:

> All contractors and owners and their agents, . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

NYLL § 240(1).  Section 240(1) protects only against "hazards related to the effects of gravity where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured." *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 470–71 (S.D.N.Y. 2014) (internal quotation marks and citations omitted); *see also Steinman v. Morton Int'l, Inc.*, 519 F. App'x 48, 50 (2d Cir. 2013) (finding that Section 240(1) imposes strict liability "for failure to provide adequate protection to workers from certain elevation-related hazards").  Owners, contractors, and their agents are strictly liable under this statute if they fail to provide this type of safety equipment and "if such failure implicates certain hazards that, in turn, proximately cause injury." *Bonocore v. Vornado Realty Tr.*, No. 5 Civ. 6422 (LTS) (GWG), 2009 WL 691933, at *8 (S.D.N.Y. Mar. 13, 2009) (citing *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 513 (N.Y. 1991); *Zimmer v. Chemung Cty. Performing Arts, Inc.*, 65 N.Y.2d 513, 523–24 (N.Y. 1985)).

Section 240 is to be construed liberally.  *Starkey v. Capstone Enterprises of Portchester*, No. 6 Civ. 1196 (KMK), 2008 WL 4452366, at *5 (S.D.N.Y. Sept. 30, 2008) (citing *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 618 N.E.2d 82, 85 (N.Y. 1993)).  The legislature's intent was to protect workers by placing ultimate responsibility for construction safety practices on the owner and general contractor instead of on workers, so any negligence by the injured worker is immaterial.  *Bonocore*, 2009 WL 691933 at *8. Responsibilities under Section 240(1) cannot be delegated, and the owner or contractor is liable even if they did not supervise or control an independent contractor that performed the work.  *Id.*

For Defendants to prevail on a motion for summary judgment to dismiss a Section 240(1) claim, they "must demonstrate that there is no genuine issue of material fact that (i) there was no violation of the statute because plaintiff was provided with appropriate safety devices and properly instructed in their use, or (ii) that any violation which occurred did not proximately cause plaintiff's injury."  *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 452 (S.D.N.Y. 2005).

### B.  Discussion

#### 1.  Corrales' Motion for Summary Judgment

Corrales argues that he was not provided with either the necessary safety devices to assist in unloading the truck such as a ladder nor the safety devices that would prevent his fall such as somewhere to secure his harness.  Doc. 89 at 9.  He cites two cases that hold that the absence of a safety device while unloading a truck is, as a matter of law, a proximate cause of injuries resulting from a fall from the truck while unloading.  *See Curley v. Gateway Commc'ns Inc.*, 250 A.D.2d 888, 890 (N.Y. App. Div. 1998) (holding as such due to the absence of a forklift, hoist, or crane); *Worden v. Solvay Paperboard, LLC*, 24 A.D.3d 1187, 1188 (N.Y. App. Div. 2005)

(holding as such due to the absence of, e.g., a ladder, an elevated bucket, or a harness).  He also

cites a number of New York state cases granting summary judgment under Section 240(1) for

workers injured after falling off materials on a flatbed truck with no safety equipment, including

cases with facts that appear to be indistinguishable from the instant case.  *See, e.g.*, *Idona v.*

*Manhattan Plaza, Inc.*, 147 A.D.3d 636 (N.Y. App. Div. 2017) ("Plaintiff's testimony that he fell

from scaffolding materials stacked atop the surface of a flatbed truck, about 10 feet above the

ground, and that he was not provided with a safety device that would have prevented his fall, was

sufficient to establish his entitlement to partial summary judgment on his Labor Law § 240

(1) claim.  Although plaintiff was wearing a safety harness at the time of the accident, there was

no place on the truck where the harness could be secured.") (internal citation omitted); *Myiow v.*

*City of New York*, 143 A.D.3d 433, 436 (N.Y. App. Div. 2016) ("[P]laintiff's fall from a height

of 13 or 14 feet above the ground constitutes precisely the type of elevation-related risk

envisioned by the statute[.]") (internal quotation marks omitted).

Defendants argue that there are material issues of fact as to whether the accident occurred

as a result of an elevation-related hazard implicating Section 240(1).  Doc. 118 at 10.  If the

materials were only four feet two and a half inches above the ground as Defendants and Spring

Scaffolding allege, Section 240(1) might not apply.  Spring Scaffolding also argues that Corrales

was not at any height above the bed of the truck, but rather "slipped" in the truckbed and was not

standing on any materials.  Doc. 111 at 5.

Defendants cite a New York state case that holds that a four to five foot fall from a

flatbed truck is not a hazard within the scope of Section 240(1).  *See Toefer v. Long Island R.R.*,

4 N.Y.3d 399, 408 (N.Y. 2005).  *Toefer* reviewed several flatbed truck cases and found that most

do not hold that an elevation-related risk is present.  *Id.*  *Toefer* reasons that Section 240(1) is not

meant to apply to "the usual and ordinary dangers of a construction site" such as large and stable surfaces only four feet from the ground. *Id.* at 408–09. Instead, the applicability of Section 240(1) should turn on the distance between the work platform and the ground as well as the nature of the platform. *Id.*

Corrales argues that *Toefer* is inapposite because he was standing on materials on the floor of the truckbed. For example, he cites a case where the court applied Section 240(1) for a fall from the top of materials with an eight inch height on top of a flatbed truck, *Curley*, 250 A.D.2d 888, so there is a legal question as to whether Section 240(1) would apply. As noted above though, there is also an issue of fact as to the height of those materials, or whether he was standing on any materials at all, which is relevant to whether Section 240(1) would apply. Reading the facts in the light most favorable to the non-moving parties, summary judgment on this claim is not warranted. Therefore, Corrales' motion for summary judgment on Section 240(1) is DENIED.

### 2.  Spring Scaffolding's Cross-Motion for Summary Judgment

In support of its cross-motion dismissing the Section 240(1) claim, Spring Scaffolding relies on two main cases. In the first case, the plaintiff did not raise a question of fact regarding whether a safety device would have been required. *Berg v. Albany Ladder Co., Inc.*, 10 N.Y.3d 902 (N.Y. 2008). Although the plaintiff in *Berg* fell off of materials on a flatbed truck stacked to a total height of approximately ten feet, the court held that he had failed to adduce proof sufficient to create a question of fact as to whether a safety device was needed. Corrales argues, and this Court agrees, that *Berg* is distinguishable because that plaintiff actually was provided with and was using another safety device to unload the materials – a forklift. *Id.* Therefore, the

plaintiff needed to show that additional safety devices such as a harness should have been provided.  *See Myiow*, 143 A.D.3d at 436.

Here, it is undisputed that Corrales was not provided with any safety equipment other than the harness, which could not be attached to anything.  Additionally, the plaintiff in *Berg* did not simply fall from losing his balance; instead, he climbed into a bundle of trusses that had begun rolling off of the truck towards him which then toppled to the ground.  *Berg*, 10 N.Y.3d at 903.  The court thus affirmed dismissal of the claim because he was not a true "falling worker" within the meaning of the statute, as it wasn't an elevation-related hazard that caused the fall but rather an accident with the materials.  *Id.* at 903–04.  Corrales asserts that he simply fell off of the materials on the truck with no other precipitating cause.  Therefore, *Berg* is inapplicable.

The second case Spring relies on is *Toefer*, discussed above, in which the plaintiff fell from the floor of a flatbed truck.  *Toefer*, 4 N.Y.3d at 405.  As explained above, *Toefer* is distinguishable because Corrales alleges that he was standing on materials on top of the flatbed and not the stable bed of the truck itself, so Spring Scaffolding's reliance on *Toefer* does not warrant a grant of summary judgment dismissing the claim.

Spring Scaffolding also argues that Corrales' fall was due to an "ordinary workplace risk" that does not implicate Section 240(1) because he only fell from the bed of the truck.  Doc. 104 at 11.  Spring Scaffolding supports this argument with a case that states "[i]t is well established that the surface of a flatbed truck does not constitute an elevated work surface for purposes of Labor Law § 240(1)."  *Brownell v. Blue Seal Feeds, Inc.*, 89 A.D.3d 1425, 1426 (N.Y. App. Div. 2011) (internal quotation marks and citations omitted).  As explained above, this principle is inapplicable because there is a dispute as to whether Corrales fell from the bed of the truck or from materials on top of the truck.  Corrales cites to a number of cases that show that

materials on the surface of a truckbed can constitute an elevated work surface.  *See, e.g.*, *Idona*, 147 A.D.3d 636; *Myiow*, 143 A.D.3d at 436; *Phillip v. 525 East 80th Street Condominium*, 93 A.D.3d 578 (N.Y. App. Div. 2012).  Reading the facts in favor of Corrales, the non-moving party, Spring Scaffolding's argument is thus unavailing.

Spring Scaffolding lastly argues that Corrales needed to demonstrate that he could not have moved the materials from the truck any way other than by standing on the materials.  Doc. 104 at 12–13.  They argue that since he could have completed the task from ground level, § 240(1) should not apply.  *Id.*  In support, they cite *Broggy v. Rockefeller Grp., Inc.*, 8 N.Y.3d 675 (N.Y. 2007), which affirmed summary judgment in favor of the defendants regarding a Section 240(1) claim because the plaintiff failed to establish that he was obliged to work at an elevation.  However, such proof appeared to be dispositive in *Broggy* because there was evidence in the record that the plaintiff had completed the same task eight other times at the same height without any safety devices.  *Id.* at 682.  This differs from Corrales' accident, for which there is no evidence that Corrales could have safely completed the task without having to be on an elevated surface.  Corrales also argues that this argument also goes against the principle that the worker's negligence is immaterial to a claim under Section 240(1).  *Bonocore*, 2009 WL 691933, at *8 (citing *Zimmer*, 65 N.Y.2d at 521).  The Court agrees that *Broggy* cannot be read to support Spring Scaffolding's conclusion that it was incumbent on Corrales to demonstrate that he could not have moved the gate from the ground by reaching upwards.  Doc. 123 at 17.

Taking Corrales' facts to be true, none of Spring Scaffolding's arguments merit summary judgment dismissing the Section 240(1) claim.  Spring Scaffolding's motion for summary judgment as to Section 240(1) is therefore DENIED.

VI.   **Section 200 and Common Law Negligence**

Corrales moves for summary judgment on his Section 200 claim against the general

contractors, Procida Construction Corp. and Alvin H. Butz, Inc.  Doc. 88.  Defendants cross-

move for summary judgment dismissal of the Section 200 claim.  Doc. 92.

A.  **Legal Standard**

Section 200 of the New York Labor Law states:

> All places to which this chapter applies shall be so constructed, equipped, arranged,
> operated and conducted as to provide reasonable and adequate protection to the lives,
> health and safety of all persons employed therein or lawfully frequenting such places.
> All machinery, equipment, and devices in such places shall be so placed, operated,
> guarded, and lighted as to provide reasonable and adequate protection to all such persons.

NYLL § 200(1).  Section 200 is a codification of the common-law duty of an owner or

general contractor to ensure that construction sites are safe places to work.  *Buono v. AvalonBay*

*Communities, Inc.*, No. 19 Civ. 5413 (LGS), 2021 WL 51524, at *4 (S.D.N.Y. Jan. 6, 2021).

Courts generally analyze Section 200 claims and common law negligence simultaneously.  *Id.* at

*4 (citation omitted).  A plaintiff "must demonstrate the existence of a duty, the breach of which

may be considered the proximate cause of the damages suffered by the injured party."  *Dos*

*Santos v. A. Corradi Builders, Inc.*, No. 5 Civ. 3341 (KMK) (LMS), 2008 WL 11517447, at *3

(S.D.N.Y. Sept. 26, 2008) (internal quotation marks omitted).  It is a precondition to this duty

that the party has the authority to control the injury-causing activity to enable it to avoid or

correct unsafe conditions.  *Id.* (citing *Comes v. N.Y. State Elec. & Gas Corp.*, 82 N.Y.2d 876,

877 (N.Y. 1993); *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 352 (N.Y. 1998)).

Liability requires that a defendant "had actual or constructive notice of the condition complained

of and exercised supervision or control over the work performed by the plaintiff."  *Id.* (citing

*Wilson v. City of New York*, 89 F.3d 32, 28 (2d Cir. 1996)).  "A defendant has the authority to

supervise or control the work for purposes of Labor Law § 200 when the defendant bears the responsibility for the manner in which the work is performed." *Kiss v. Clinton Green N., LLC*, No. 17 Civ. 10029 (LGS), 2020 WL 4226564, at *5 (S.D.N.Y. July 23, 2020) (citation omitted).

### B. Discussion

#### 1. Corrales' Motion for Summary Judgment

Corrales argues that it is uncontroverted that the general contractors here had the contractual authority to take reasonable precautions to prevent injuries, citing Section 10.2 of the contract between the owners and general contractors, Doc. 89 at 11–12, which states in relevant part:  "The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to employees on the Work and other persons who may be affected thereby." Doc. 90-2 § 10.2.1–2.  Corrales also argues that John Balog, the site supervisor and employee of the general contractors, as well as Karell Enright, an employee of Site Safety, LLC, were on site on the day of the accident and had authority to stop unsafe work.  Doc. 89 at 12.  Lastly, they argue that Matthew Horrigan, the owners' representative, visited weekly and would advise the general contractors if he saw unsafe work or conditions.  *Id.*  Together, Corrales argues, the presence and authority of these employees demonstrate that the general contractors were responsible for ensuring safe work.  *Id.*  Therefore, Corrales argues they had authority to control the work and failed to intervene to stop the unsafe work Corrales was directed to perform, rendering them liable as a matter of law under Section 200.  *Id.* at 13.  He supports this argument with a citation to *Moscati v. Consol. Edison Co. of New York, Inc.*, 168 A.D.3d 717 (N.Y. App. Div. 2019), which states that the determining factor is whether the party had the right to exercise control, not whether it actually exercised that control.

17

Defendants argue the motion should be denied because it was actually Corrales'
supervisor, Salvador Lopez, who exercised exclusive control over Corrales' work at the time of
his fall.  Doc. 118 at 17.  Defendants cite *Comes*, 82 N.Y.2d 876) in support of their argument.
*Comes* involved a construction worker who was injured after his employer directed him to carry
a 14-foot steel beam unassisted.  *Id.* at 877–78.  The court found that Comes' injury was caused
by lifting the beam, with no allegations of other dangerous conditions on the premises and no
evidence that defendant owners exercised any control over how the steel beam would be moved.
*Id.*  Although defendant owners in that case hired a construction inspector to visit the site, the
inspector merely observed the work and reported safety violations.  *Id.*  Therefore, the owner, as
compared to Comes' employer, the general contractor, faced no liability under Section 200.  *Id.*
Defendants thus argue that the actual exercise of supervisory control over the work is necessary
to impose Section 200 liability, in contradiction to *Moscati*.  *See also Hughes v. Tishman Const.
Corp.*, 40 A.D.3d 305, 306 (N.Y. App. Div. 2007) ("General supervisory authority is insufficient
to constitute supervisory control[.]"); *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 301 (2d
Cir. 2009) ("[L]iability attaches only where the general contractor 'controlled the manner in
which the plaintiff performed his or her work[.]'") (quoting *Hughes*, 40 A.D.3d at 306).

In further support of this argument, Defendants cite a number of cases dismissing Section
200 claims on the basis that the defendant did not have sufficient supervisory control, despite
defendants having employees present at the work site with authority to stop unsafe work, as in
the instant case.  *See, e.g.*, *Rivera v. Ambassador Fuel & Oil Burner Corp.*, 450 A.D.3d 275, 276
(N.Y. App. Div. 2007) ("[T]he mere presence of an owner at the work site, even if indicative of a
general right of inspection, does not create an inference of supervisory control[.]"); *O'Sullivan v.
IDI Const. Co.*, 28 A.D.3d 225, 226 (N.Y. App. Div. 2006), *aff'd*, 7 N.Y.3d 805 (N.Y. 2006)

18

("[W]hile the general contractor's on-site safety manager may have had overall responsibility for the safety of the work done by the subcontractors, such duty to supervise and enforce general safety standards at the work site was insufficient to raise a question of fact as to its negligence[.]").

The Court agrees that Corrales is not entitled to summary judgment on his Section 200 claim. Corrales has failed to demonstrate that the general contractors, as opposed to his immediate supervisor and employer, had sufficient supervisory control of the unloading of the materials from the truck to impose a duty of care toward him. Instead, Corrales has only shown that his supervisor Salvador Lopez had sufficient control over his work activities to impose a duty of care toward him. The fact that the general contractors had employees present with authority to stop unsafe work and hired Site Safety LLC to oversee worksite safety is not sufficient to demonstrate actual supervisory control. Therefore, Corrales' motion for summary judgment on his Section 200 and common-law negligence claims is DENIED.

### 2. **Defendants' Motion for Summary Judgment**

Defendants largely repeat their arguments from their opposition to Corrales' motion for summary judgment on the Section 200 claim. They argue primarily that they did not exercise actual supervisory control over Corrales' work, and therefore had no duty of care towards Corrales. They again cite numerous cases dismissing Section 200 negligence claims on the basis that the defendant did not exercise actual supervisory control. *See, e.g.*, *Hughes*, 40 A.D.3d at 306; *Rivera*, 450 A.D.3d at 276; *Bednarczyk v. Vornado Realty Tr.*, 63 A.D.3d 427, 428 (N.Y. App. Div. 2009) (dismissing Section 200 and negligence claim after finding that "employees inspected the work and had the authority to stop it in the event they observed dangerous conditions or procedures but did not otherwise exercise supervisory control over the work[.]").

They argue that the facts here warrant similar dismissal, as the record establishes that Corrales'
work was supervised only by Spring Installations.  Specifically, Foreman Salvador Lopez stated
in his deposition that he planned the unloading of the truck and had placed Corrales in his
position on the truck.  Doc. 92-11 at 48:24–49:7.

In response, Corrales repeats his arguments that the general contractors had responsibility
to take reasonable precautions to prevent workplace injuries and that the presence of Balog,
Horrigan, and Enright demonstrate that the general contractors had authority to stop unsafe work.
Doc. 95 at 12–14.  Corrales argues that the general contractors "clearly possessed the authority to
intervene and stop the unsafe work Mr. Corrales and his co-workers were directed to perform"
and that the determinative factor is whether the party had the right to exercise control over the
work, not whether they actually did exercise control.  *Id.* at 14 (citing *Moscati*, 168 A.D.3d at
720).  He also argues, without citations to caselaw, that the owners also breached their duty to
provide a safe workplace because as owners, they "clearly had the authority to exercise control
over the work being performed at the site."  *Id.*

Defendants' reply points out that in earlier proceedings, Corrales' counsel has previously
taken a contradictory opinion as to the level of supervision required to impose liability.  In Doc.
86, Corrales' counsel states that "[i]n addition to possessing the authority, owners and
contractors do need, to *some degree*, to also exercise that authority."  Doc. 86 at 1.  This
statement by Corrales' counsel was made in a letter responding to Defendants' accusations that
they had intentionally misrepresented the holding in *Comes*, so Corrales' counsel further
clarified that they would demonstrate that Defendants "each possessed the authority to, and in
fact did supervise and control Mr. Corrales' work."  *Id.* at 1–2.  Defendants allege that Corrales'

counsel has acted in bad faith in repeating the misstatement that the parties need not actually exercise supervisory control and request an award of sanctions in their favor.  Doc. 130 at 10.

The Court agrees that general supervisory control is not enough to impose Section 200 liability but declines to award sanctions.  As explained above, there is no material factual dispute about Corrales' supervision on the day of the accident.  Corrales was supervised by Lopez of Spring Installations, not the owners or general contractors.  Therefore, it is clear as a matter of law that Defendants are not liable under Section 200 or common law negligence.  Defendants' motion for summary judgment to dismiss Corrales' Section 200 and common law negligence claims is therefore GRANTED.

## VII.   Section 241(6)

Defendants and Spring Scaffolding move for summary judgment to dismiss Corrales' claims under Section 241(6).

### A.   Legal Standard

Section 241(6) of the New York Labor Law states:

> All contractors and owners and their agents . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:  . . . All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

NYLL § 241(6).  "A plaintiff may bring a claim under Section 241(6) if he alleges that a specific and concrete provision of the [State] Industrial Code was violated and that the violation proximately caused his injuries."  *Krafcsik v. Egnatia Constr. Inc.*, No. 19 Civ. 5376 (AT), 2021 WL 4198218, at *3 (S.D.N.Y. Sept. 14, 2021) (internal quotation marks and citations omitted).  The question of whether a particular Industrial Code provision is within the scope of the

regulation is a question of law for the court.  *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 440 (S.D.N.Y. 2014).

**B.  Discussion**

Corrales argues that liability is warranted under Rule 23-1.16(b) of the Compilation of Codes, Rules and Regulations of the State of New York.  Doc. 95 at 9.  Rule 23-1.16(b) reads:

> Attachment required.  Every approved safety belt or harness provided or furnished to an employee for his personal safety shall be used by such employee in the performance of his work whenever required by this Part (rule) and whenever so directed by his employer.  At all times during use such approved safety belt or harness shall be properly attached either to a securely anchored tail line, directly to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline.  Such attachments shall be so arranged that if the user should fall such fall shall not exceed five feet.

N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.16(b).  Defendants argue that this rule is inapplicable because the plaintiff is not alleging that a tail line was provided or that there was a defect in his harness.  Doc. 93 at 13.  Spring Scaffolding also moves to dismiss this claim and adopts the arguments of Defendants, making no additional arguments regarding Section 241(6).  Doc. 104 at 1.

A court in this District has found liability under Section 241(6) due to a violation of Rule 23-1.16(b) in a similar construction fall case.  In *Hernandez v. GPSDC (New York) Inc.*, No. 4 Civ. 127 (GWG), 2006 WL 563308, at *18 (S.D.N.Y. Mar. 9, 2006), the court granted partial summary judgment on the issue of whether Rule 23-1.16(b) was violated after finding that there were times when the plaintiff was not attached to anything, despite having a lanyard that could attach to a structure.  In *Hernandez*, the plaintiff was given a single lanyard system that required him to hook and unhook himself to different attachment points to complete his task, with no "lifeline" or dual lanyard provided, meaning that he was unattached while rehooking to a new attachment point.  *Id.* at *14.  The court found that because he was operating at a dangerous

height of approximately 32 feet, he should have remained connected to an anchor or lifeline at all times.  *Id.* at *15.

Corrales's facts are similar.  Corrales was working on top of the flatbed, and, although Corrales had a safety harness, there was nowhere to attach it.  There is some dispute as to the exact height from which Corrales fell, but, construing the facts in favor of the non-moving party, Corrales' testimony that he fell from approximately 10 feet demonstrates that Rule 23-1.16(b) would plainly apply, as the height is over five feet, and the rule would be violated by not providing Corrales with anywhere to attach the harness.

None of the New York state cases Defendants cite in their reply warrant a contrary conclusion.  Defendants argue that Rule 23-1.16(b) does not specify *when* the safety devices required in the rule are required, and Corrales has not created a triable issue of fact as to whether the rule applies to the facts at hand.  Doc. 130 at 2.  The Court disagrees.  The case Defendants cite in support of their argument was deciding whether the rule applied in a situation where the plaintiff had not been given *any* safety equipment, and therefore the court had to decide whether the rule applied or not.  Here, Corrales was wearing a safety harness and has argued that it should have been attached to something.  On these facts, the rule would apply.  Defendants also argue that the rule only applies if Corrales was directed to wear a safety belt by his employer.  Doc. 130 at 3.  The Court disagrees with this as well.  The rule states that safety belts and harnesses shall be used "whenever required by this Part (rule) *and* whenever so directed by his employer." N.Y. Comp. Codes R. & Regs. tit. 12, § 23-1.16(b) (emphasis added).  Therefore, the rule applies in both circumstances and not only when directed by the employer.

Finding that a jury could find that Section 241(6) was violated, Defendants' and Spring Scaffolding's motions to dismiss the Section 241(6) claim are DENIED.

## VIII.   Motions for Summary Judgment for Indemnification of Spring Scaffolding

Defendants move for summary judgment for contractual indemnification against Spring Scaffolding.  Doc. 92.  Spring Scaffolding cross-moves for summary judgment to dismiss the contractual indemnification claim.  Doc. 102.

### A.  Legal Standard

As a matter of basic contract law, "courts should enforce clear, unambiguous contracts according to their plain meaning."  *Dan-Bunkering (Am.), Inc. v. Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 17 Civ. 9873 (KPF), 2020 WL 3893281, at *6 (S.D.N.Y. July 10, 2020), *appeal withdrawn sub nom. Dan-Bunkering (Am.), Inc. v. Ardica Construcciones, S.A. de C.V.*, No. 20-2668, 2020 WL 8461701 (2d Cir. Nov. 24, 2020) (citing *TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 512–13 (N.Y. 2008)).

New York General Obligations Law § 5-322.1 states:

> A covenant, promise, agreement or understanding . . .  relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; . . . .  This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent.

"A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances."  *Drzewinski v. Atl. Scaffold & Ladder Co.*, 70 N.Y.2d 774, 777 (N.Y. 1987) (internal quotation marks omitted) (collecting cases).  However, Spring Scaffolding argues that the rule of anti-subrogation bars enforcement of the indemnification provision in this case.

24

The rule of anti-subrogation provides that an insurer "has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered." *N. Star Reinsurance Corp. v. Cont'l Ins. Co.*, 82 N.Y.2d 281, 294 (N.Y. 1993) (citation omitted). Subrogation is an equitable doctrine in which an insurer can seek indemnification from third parties who cause a loss that the insurer must reimburse. Anti-subrogation means that where another party insured by the *same* insurer has caused the loss that the insurer is reimbursing, the insurer cannot seek indemnification from that other insured party. *Id.* at 295–96. Public policy requires this exception to the equitable doctrine of subrogation so that insurers do not pass losses on to their own insureds and to make certain that insurers do not have a conflict of interest in vigorously defending parties they insure. *Id.*

### B. Discussion

#### 1. Parties to be Indemnified

Spring Scaffolding argues as an initial matter that the only Defendants potentially entitled to indemnification are Draper Family Housing Development Fund Corporation and The Gilbert on First LLC. Doc. 104 at 14. "Owner" is defined in the Subcontract as Draper Family Housing Development Fund Corporation and The Gilbert on First LLC, and "General Contractor" is defined in the contract as "Procida-Butz 1912 1st Avenue." Doc. 92-3 at 1. Since the indemnity provision only indemnifies the Owner and General Contractor, Doc. 92-3 § 11.1, Spring Scaffolding argues neither Gilbert Middle Condo LLC, Procida Construction Corp., nor Alvin H. Butz, Inc. are entitled to indemnification. They argue that both Procida and Butz could have been designated as indemnitees if the parties intended to indemnify them, and contracts should be strictly construed to not include parties not specified in the contract. *See Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (N.Y. 1989) ("When a party is under no legal duty

to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed[.]" (citations omitted)).  While the indemnification provision does also indemnify the "agents" of the General Contractor and Owner, Spring Scaffolding argues that because "agents" is not defined, the language is not sufficiently clear to enforce an obligation to indemnify and, in accordance with the New York Court of Appeals, the Court should not "rewrite the contract and supply a specific obligation the parties themselves did not spell out."  *Tonking v. Port Auth. of New York & New Jersey*, 3 N.Y.3d 486, 490 (N.Y. 2004) (declining to indemnify an agent of the owner for purposes of a construction contractual indemnification agreement).  Lastly, they argue that, even though Procida Construction Corp. signed the contract as a partner in Procida-Butz 1912 1st Avenue, the partners in joint ventures are not entitled to indemnity where only the joint venture is designated. Therefore, they argue that Procida, Butz, and Gilbert Middle Condo LLC are not entitled to indemnification.

Defendants disagree, arguing that the contract documents read as a whole make clear that these three parties are also indemnitees by virtue of their status as "additional insureds."  Doc. 131 at 7–8.  While the argument is difficult to follow, the Court reads it as follows:  The Subcontract incorporates the contract between the owners and the general contractors.  Doc. 92-3 at 23.  The contract between the owners and the general contractors contains an indemnification provision defining indemnitees as, among others, "all other parties required to be listed as additional insureds under any insurance policy required hereunder."  Doc. 92-1 at 79.  The Subcontract then states that Spring Scaffolding was obligated to obtain contractual liability insurance covering "additional insureds," including these three disputed parties.  Doc 92-3 at 29–

30.  Therefore, they argue, these three parties are designated indemnitees under the indemnification provision.

It is not clear to the Court why the indemnification provision applying to the general contractors in the first contract would dictate which parties are indemnified under the Subcontract.  Spring Scaffolding responds similarly, arguing that insurance procurement provisions cannot be used to prove intended beneficiaries for the purposes of indemnity provisions, and definitions under the main contract cannot override definitions under the Subcontract.  Doc. 104 at 14–16.  Spring Scaffolding further argues that all Defendants have demonstrated through their argument is that the indemnity provision is ambiguous and therefore cannot be enforced against the three parties at issue.  *See Tonking*, 3 N.Y.3d at 490 (declining to enforce an unclear indemnification provision).  They also cite caselaw holding that incorporated contracts only bind a subcontractor as to "prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" and not to indemnification provisions.  *Waitkus v. Metropolitan Hous. Partners*, 50 A.D.3d 260, 261 (N.Y. App. Div. 2008) (citation omitted).

Perhaps recognizing the limits of their argument, Defendants further argue that the three parties in dispute are "intended beneficiaries" of the Subcontract's indemnity provision since the Subcontract and its insurance requirements reflect an intention of the parties to protect the interests of the three parties at issue.  Doc. 131 at 8.  They argue that "it is well settled" that a contractor's obligation to provide contractual liability insurance to additional insureds is evidence that a party is an intended beneficiary of the contract.  *Id.*  However, they cite only to *Clapper v. County of Albany*, 188 A.D.2d 774 (N.Y. App. Div. 1992), which focuses on insurance provisions and does not discuss extension of indemnification provisions to parties not

27

named.  Defendants thus have not demonstrated that intention to insure certain parties translates

to a requirement that those parties also be indemnified.  Insurance and indemnification are

separate concepts and contractual obligations running to each should not be conflated.

Defendants do point out in a footnote, however, that The Gilbert on First LLC has Gilbert

Middle Condo as a member with ownership interest, and therefore indemnification of The

Gilbert on First LLC necessarily includes its member Gilbert Middle Condo.  Doc. 131 at 7 n.11

(citing Doc. 92-8 at 27:19–23).  They have not provided any law or caselaw on this question, so

the Court declines to determine this matter at this juncture.

In sum, the Court agrees with Spring Scaffolding that the indemnification provision is not

sufficiently clear to require indemnification for parties other than Draper Family Housing

Development Fund Corporation and The Gilbert on First LLC.

### 2.  <u>Scope of the Indemnification Provision</u>

Defendants argue that the indemnity provision in the Subcontract obligates Spring

Scaffolding to indemnify them from any of the claims in this case, as the indemnity provision is

clear and unambiguous.  Doc. 93 at 20.  Specifically, they argue that indemnity is triggered

because the accident occurred during the installation of fencing that Spring Scaffolding was

obligated to provide under the Subcontract.  *Id.* at 22.  They argue that Spring Scaffolding's

provision of the labor, materials, equipment, supervision, hoisting, trucking, and delivery of the

material involved in Corrales' accident constitutes "Work" within the definition in the

Subcontract, and Corrales' accident clearly "arose out of" this "Work."  *Id.* at 21–22.  They thus

argue that they are entitled to reimbursement of attorneys' fees, expenses, costs and

disbursements incurred in defense of Plaintiff's claim and in prosecution of its indemnification

claim.  *Id*. at 20, 23.  Spring Scaffolding does not dispute that Corrales' activities at the site were in fulfillment of the "Work" contemplated by the Subcontract.  Doc. 106 ¶ 24.

Defendants also argue that indemnity provisions for claims "arising out of" contracted work do not require proof of the indemnitor's negligence or fault.  Doc. 93 at 22.  In support, they cite a number of cases requiring indemnification without a finding of liability on the part of the indemnitor.  *See, e.g.*, *Brown v. Two Exch. Plaza Partners*, 76 N.Y.2d 172 (N.Y.1990); *Vey v. Port Auth. of New York & New Jersey*, 54 N.Y.2d 221, 226–27 (N.Y. 1981) (requiring indemnification because "[t]he provision does not specifically limit the subcontractor's liability to his own acts or omissions.").  They argue that the Subcontract at issue here, like in these cases, does not condition indemnity on a finding of fault and instead entitles the general contractors to total indemnification for covered claims.  Doc. 93 at 22–23.  Spring Scaffolding does not specifically refute this argument, but rather points out that no party has brought negligence claims against Spring Scaffolding.  Doc. 114 at 13.  They also generally argue that they are not liable, arguing that Spring Installations handled the delivery and directed work at the site while Procida and its agents supervised and controlled safety at the site.  *Id.* at 14–16.

Spring Scaffolding therefore seems to imply that, in the absence of a finding of liability on their part, the indemnity provision would not apply.  The Subcontract at issue here, however, explicitly defines "Subcontractor" as including Spring Scaffolding's subcontractors of any tier, Doc. 92-3 § 1.9, and the indemnification provision itself also repeats this language, requiring indemnification arising out of "the performance of the Work by Subcontractors [and] its subcontractors . . . of any tier."  Doc. 92-3 § 11.1.  Since Spring Scaffolding concedes that Corrales' claim arose from work performed by Spring Installations, Defendants argue that the indemnity provision is triggered as a matter of law.  Doc. 93 at 22–23.

The Court agrees.  By the plain terms of the provision, injuries arising out of work by Spring Installations, Spring Scaffolding's sub-subcontractor, trigger the indemnification provision.  The Court also finds that indemnity is not conditioned on a showing of negligence. Because Corrales' injuries arose out of his work with Spring Installations for work that was contemplated as part of the Subcontract, the indemnification provision was triggered by the plain terms of the Subcontract, requiring Spring Scaffolding to indemnify the Draper Family Housing Development Fund Corporation and The Gilbert on First LLC .

### 3.  <u>General Obligations Law § 5-322.1</u>

The parties also address General Obligations Law § 5-322.1, which voids indemnification provisions in construction contracts that indemnify a party for their own negligence.  Defendants argue that the indemnity provision does not violate General Obligations Law § 5-322.1.  Doc. 93 at 23.  They argue that the provision does not purport to indemnify them for their own active negligence as it has "savings language" contemplating partial indemnification if Defendants are found negligent.[5]  *Id.*  Spring Scaffolding responds that to the extent the provision requires indemnification for any of Defendants' negligence, whether partial or sole, such provisions are unenforceable as violative of General Obligations Law § 5-322.1.  Doc. 104 at 15.  The Court has granted Defendants' motion for summary judgment dismissing Corrales' Section 200 and common law negligence claims, so enforcement of the indemnification provision here would not result in Defendants being indemnified for their own acts of negligence.  Therefore, enforcement will not violate General Obligations Law § 5-322.1.

---

[5] The provision requires indemnification "whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder, shall not arise if such injury . . . is caused by the sole negligence of a party indemnified hereunder."  Doc. 92-3 § 11.1.

### 4. **Procida's Indemnification of the Owners**

Spring Scaffolding also argues that, while Gilbert and Draper Family arguably are indemnified under the Subcontract, they have already been indemnified because "their defense and indemnity have already been undertaken by Procida under the indemnification of Procida's contract with the owners." Doc. 114 at 17. Therefore, they state that any indemnity obligation to Draper Family and Gilbert would be shared between Procida and Spring Scaffolding.

Defendants have not addressed this argument, but the Court finds that the question of Procida's potential indemnity towards the owners is not before the Court at this time. Spring Scaffolding clearly has an obligation to indemnify the owners and general contractors, and any arguments about joint or partial indemnification need not be reached at this time.

### 5. **Anti-Subrogation**

Spring Scaffolding argues that Defendants' contractual indemnification claim should be dismissed because it violates the principles of anti-subrogation. Doc. 104 at 19. Spring Scaffolding argues that, because defense fees are already being paid under a business automobile policy issued by State Farm, a claim for defense fees amounts to a request for double recovery. *Id.* They argue that anti-subrogation bars the Additional Insured (Defendants) from seeking relief against Spring Scaffolding, another insured party. *See, e.g.*, *Huthmacher v. Dunlop Tire Corp.*, 28 A.D.3d 1166 (N.Y. App. Div. 2006) (holding that anti-subrogation rule bars a third-party action where both parties were insured under the same policy); *McMann v. A.R. Mack Constr. Co., Inc.*, 8 A.D.3d 1083 (N.Y. App. Div. 2004) (same). Spring Scaffolding also argues that, even if breach is found, damages would be limited to out-of-pocket expenses incurred because of lack of insurance, of which Defendants have none because they had been previously covered by a policy with Berkley procured by Procida Construction Corp. Doc. 104 at 15 (citing

*Antinello v. Young Men's Christian Ass'n*, 42 A.D.3d 851, 852 (N.Y. App. Div. 2007) (holding that, where injured party had its own insurance and sustained no out-of-pocket costs due to breach of insurance requirement, the injured party was not entitled to damages from the breaching party (collecting cases))).

In response, Defendants argue that the anti-subrogation rule only bars indemnification claims up to the limits of the common policy, so their claim for contractual indemnification should stand to the extent that it seeks damages in excess of the policy limit.  Doc. 120 at 10–12. *See, e.g.*, *Federated Dep't. Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D.3d 32, 39–40 (N.Y. App. Div. 2006).  Therefore, Defendants argue that they are still entitled to enforce their contractual indemnity claim against Spring Scaffolding for any damages in excess of the $1,000,000 business auto policy issued by State Farm and the claim should not be dismissed. Defendants further argue that it is not certain that State Farm will indemnify them for the defense of this action, as State Farm has explicitly reserved the right to later disclaim coverage if they find that coverage was not applicable.  *See* Doc. 103-11 at 6.  Further, they argue that Spring Scaffolding's contention that they obtained excess coverage above the primary $1,000,000 limit has not been proven, as the only evidence Spring Scaffolding put forward is the Insurance Certificates, which courts have held do not constitute admissible evidence of the existence of coverage where they contain language, as they do here, stating that the Certificate is for information only and confers no rights.  *Compare* Doc. 52-1 *with Moleon v. Kreisler Borg Florman Gen. Const. Co.*, 304 A.D.2d 337, 339–40 (N.Y. App. Div. 2003) (granting a motion to dismiss a claim regarding insurance coverage on the basis that an insurance certificate naming the plaintiff as an insured was insufficient to establish that plaintiff was insured where the other party provided a copy of the policy showing plaintiff was not insured).  Therefore, Defendants

argue that it is not certain that excess liability coverage exists, so Spring Scaffolding cannot

show as a matter of law that the contractual indemnification claim is precluded for amounts

above the $1,000,000 policy limit either.  Lastly, Defendants dispute Spring Scaffolding's

characterization of their indemnity claim as being for "double recovery."  They argue that there

is no evidence in the record regarding whether they were made whole for defense fees once State

farm assumed the defense.  Spring Scaffolding responds by arguing that it is Defendants' burden

to demonstrate that there are non-covered legal fees or that State Farm has not covered the

defense, all information they claim is exclusively within Defendants' knowledge.  Doc. 125 at

10.

The Court finds that the issue of damages is not yet ripe, so the Court cannot say as a

matter of law whether Defendants' contractual indemnity claim against Spring Scaffolding is

entirely barred by anti-subrogation.  If damages over $1,000,000 are established (assuming State

Farm at no point disclaims coverage), the contractual indemnification claim would survive,

subject to the open question of whether excess liability coverage exists.  Therefore, the Court

cannot determine whether anti-subrogation warrants dismissal of Defendants' contractual

indemnity claim.  *See Goya v. Longwood Hous. Dev. Fund Co., Inc.*, 192 A.D.3d 581, 584–85

(N.Y. App. Div. 2021) ("In the absence of proof that [the] insurer will actually be covering the

same risk for [both parties], there is no basis at this time to dismiss the indemnification claim on

the basis of anti-subrogation.").  However, the Court finds that Defendants have failed to

establish a material factual dispute regarding whether State Farm has disclaimed coverage or as

to whether Defendants have been made whole through State Farm's defense.  Unlike in *Moleon*,

Defendants have provided no evidence that the insurance coverage has been definitively

disclaimed or does not apply to the facts at hand.  A claim cannot be sustained on the basis that

insurance, at some unspecified future time, might be disclaimed or that Defendants might argue that they were not made whole when State Farm assumed the defense.  However, for the reasons above, this does not alter the Court's conclusion that the contractual indemnity claim should not be dismissed.  Accordingly, Spring's motion for summary judgment to dismiss the contractual indemnification claim is DENIED.

In conclusion, at this juncture, the Court finds that the indemnification provision only applies to Defendants Draper Family Housing Development Fund Corporation and The Gilbert on First LLC.  Therefore, Defendants' motion for summary judgment for contractual indemnification against Spring Scaffolding is GRANTED as to Defendants Draper Family Housing Development Fund Corporation and The Gilbert on First LLC and DENIED as to Defendants Gilbert Middle Condo LLC, Procida Construction Corp., and Alvin H. Butz, Inc. The Court also finds that Defendants' contractual indemnification claim should not be dismissed, accordingly Spring Scaffolding's motion for summary judgment to dismiss the claim is DENIED.

### IX.    Defendants' Motion for Summary Judgment to Dismiss Spring Scaffolding's Counter and Cross Claims

Defendants move to dismiss Spring Scaffolding's counter and cross claims for indemnification and contribution.  Doc. 92 at 2.  Spring Scaffolding asserts a counterclaim against Defendants for "proportionate contribution and/or common law and contractual indemnity" on the basis of Defendants' responsibility."  Doc. 39 at 4; Doc. 42 at 5.  Spring Scaffolding also asserts a cross-claim against Defendants for apportionment of judgment against Spring Scaffolding in accordance with the degrees of fault of those culpable as well as "indemnification in accordance with any applicable contracts, agreements or warranties, express

or implied, or by reason of the active, and primary negligence of the other defendants herein." Doc. 39 at 5; Doc. 42 at 5–6.

### A. Legal Standard

To prevail on a claim of common-law indemnification, the party seeking indemnity "must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident . . . ." *Hernandez*, 2008 WL 220636, at *3 (citing *Correia v. Pro. Data Mgmt., Inc.*, 259 A.D.2d 60, 65 (N.Y. App. Div. 1999)).

To prevail on a claim for contribution, the party must show the contributing party "is at least partially responsible for the accident." *Robinson v. Shapiro*, 646 F.2d 734, 739 (2d Cir. 1981) (citations omitted). However, contribution can be sought "whether or not the culpable parties are allegedly liable for the injury under the same or different theories[.]" *Raquet v. Braun*, 90 N.Y.2d 177, 183 (N.Y. 1997) (internal quotation marks and citations omitted). Contribution can be sought so long as the parties are "subject to liability for damages for the same . . . injury." *Anderson v. Comardo*, 436 N.Y.S.2d 669, 674 (N.Y. Sup. Ct. 1981). "This right of [equitable] contribution is much broader than that afforded by common law indemnity[.]" *Id.* at 671.

### B. Discussion

Spring Scaffolding has not shown that Defendants are negligent, and this court has dismissed all common-law and Section 200 negligence claims against Defendants. Therefore, Spring Scaffolding cannot prevail on their counter and cross claims for common-law indemnification as to any negligence by Defendants. *See Seidita v. Millennium Pipeline Co., LLC*, No. 9 Civ. 421 (JCF), 2011 WL 4036095, at *5 (S.D.N.Y. Sept. 2, 2011).

As for the contribution claim, Defendants similarly argue that, in the absence of a showing of negligence on their part, Spring Scaffolding's claim for contribution must be dismissed. They argue that their liability, if any, is purely statutory. Doc. 131 at 9. Spring Scaffolding did not address these arguments in their response. However, a claim for contribution can be based on more than negligence. *See Raquet*, 90 N.Y.2d at 184–85. Although the Court has held that Defendants are not liable for negligence related to the injury, the Court cannot at this point conclusively say whether Defendants bear no liability related to the injuries for which Spring Scaffolding might request contribution.

Therefore, Defendants' motion to dismiss Spring Scaffolding's claim for indemnification is GRANTED, but their motion to dismiss Spring Scaffolding's claim for contribution is DENIED.

## X. <u>Spring Scaffolding's Motion for Leave to Amend Third-Party Answer</u>

Because Spring Scaffolding's Answer to the Third-Party Complaint did not raise the issue of anti-subrogation, Spring Scaffolding requests that the Court deem their answer amended to include anti-subrogation as an affirmative defense. Doc. 104 at 20. They argue that the doctrine of anti-subrogation could not have been raised until State Farm undertook Defendants' defense in August 2020. At that point, it became clear that Defendants' claims were already paid by State Farm. Therefore, they ask we deem the Answer amended to include an anti-subrogation defense and that we dismiss the Third-Party Complaint on that basis. Defendants dispute the argument that anti-subrogation bars their claim for indemnification. Doc. 120 at 3.

Rule 16(b) of the Federal Rules of Civil Procedure allows modification of a schedule "for good cause and with the judge's consent." Spring Scaffolding has shown good cause for amendment after the deadline for amended pleadings, as it would not have been possible to assert

the defense until State Farm assumed the defense in August 2020, nearly a year after Spring

Scaffolding's Answer was filed on October 15, 2019.  Therefore, the Court will deem the

Answer amended to include a defense of anti-subrogation.

### XI.   Spring Scaffolding's Motion for Summary Judgment to Dismiss Third-Party Complaint

Spring Scaffolding moves to dismiss the Third-Party Complaint's claim for breach of

contract regarding insurance requirements.  Doc. 102.  Defendants filed an Amended Third Party

Complaint against Spring Scaffolding on November 5, 2019 claiming indemnification under

contractual indemnity provisions and alleging breach of contractual agreement regarding Spring

Scaffolding's insurance requirements.  Doc. 41.

#### A.  Legal Standard

As a matter of basic contract law, "courts should enforce clear, unambiguous

contracts according to their plain meaning."  *Dan-Bunkering*, 2020 WL 3893281, at *6.

#### B.  Discussion

Defendants' second cause of action is for Spring Scaffolding's alleged breach of contract

as a result of insurance coverage procured by Spring Scaffolding that does not comply with the

insurance requirements in the agreement.  Doc. 41 at 6.  They thus request judgment against

Spring Scaffolding for full indemnity of any verdict, judgment or settlement in favor of Corrales

together with costs they incur in defense of the action including but not limited to counsel fees

and expenses.  *Id.*  Specifically, the claim is for breach of Article 12.1 and 12.3 of the

Subcontract.  *See* Doc. 92-3 §§ 12.1, 12.3.

Spring Scaffolding argues that the breach of contract claim should be dismissed because

they obtained coverage consistent with the contractual provisions.  Doc. 104 at 18–20.  Spring

Scaffolding argues that Procida Construction Corp. has demonstrated through its own document

disclosure that Procida was covered as an additional insured through insurance procured by Spring Scaffolding, and Insurance Certificates prove the contractual obligation was fulfilled. Specifically, they argue that the accident was covered by the business automobile policy provided by State Farm Insurance ("State Farm"), and State Farm is currently paying Procida Construction Corp.'s defense fees subject to that business automobile policy, which has a limit of $1,000,000 with excess coverage as demonstrated on the Insurance Certificates.  *See* Doc. 103-11; Doc. 52-1.  Defendants do not specifically respond to this part of Spring Scaffolding's motion and have not provided any evidence showing that insurance coverage was not obtained. Therefore, the Court finds that Spring Scaffolding has sufficiently demonstrated compliance with the insurance provisions through the Insurance Certificates.  Spring Scaffolding's motion to dismiss the breach of contract claim is thus GRANTED.

## XII.   <u>Conclusion</u>

For all these reasons, Corrales' partial motion for summary judgment is DENIED as to his claims under Sections 200 and 240(1).  Defendants/Third-Party Plaintiffs' motion for summary judgment is GRANTED in part as to Corrales' Section 200 claim, Draper Family Housing Development Fund Corporation and The Gilbert on First LLC's indemnification claim against Spring Scaffolding, and Spring Scaffolding's cross/counter-claim of indemnification against Defendants, and DENIED in part as to the Section 241(6) claim, Gilbert Middle Condo LLC, Procida Construction Corp., and Alvin H. Butz, Inc.'s contractual indemnification claim against Spring Scaffolding, and to Spring Scaffolding's contribution claim against Defendants. Spring Scaffolding's motion for summary judgment is GRANTED in part as to amending their answer and to Defendants' breach of insurance claim, and DENIED in part as to Corrales' Section 240(1) and Section 241(6) claims and Defendants' claim for contractual indemnification.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 88, 92, 93, and 102.

SO ORDERED.

Dated:     November 15, 2021
           New York, New York

_____
Edgardo Ramos, U.S.D.J.